LEAVY, Circuit Judge:
Santiago Mares-Molina (“Mares”) appeals from his sentence imposed under the sentencing guidelines following a plea of guilty to conspiracy to import cocaine in violation of 21 U.S.C. §§ 952, 960, and 963. Mares argues that the district court’s finding that he was “an organizer, leader, manager, or supervisor in [the] criminal activity” pursuant to guideline section 3Bl.l(c) is not supported by the record. We agree, and thus vacate the two-point upward adjustment in offense level and reduce Mares’ sentence to twelve months, the maximum allowable under the guidelines.
FACTS AND PROCEEDINGS
On April 20, 1989, United States Operation Alliance Agents received information from the Mexican Federal Judicial Police that they had arrested Rigoberto Perez-Morales for the murder of a suspected narcotics trafficker in Mexico and had seized $24,000 and approximately seven kilograms of cocaine. During their investigation, the agents learned that Perez and others, including a man named Ruben Zazueta-Ruiz, were smuggling cocaine into the United States in the tires of large diesel tractor/trailers. They learned that once over the border, the tractor/trailers were taken to Mares Trucking Co. located in Chula Vista, California.
Acting on this information, the agents learned that the defendant, Santiago Mares-Molina, was the owner of Mares Trucking and the lessor of the warehouse in which the cocaine was allegedly stored. On April 21, 1989, the agents executed a warrant to search the Mares Trucking warehouse. During the course of the search, the agents discovered cocaine paraphernalia and twenty-three grams of cocaine in the desk drawer of the office, and *772 cocaine residue and remnants of cocaine packaging inside twenty large tires stacked in a stake-bed truck. Also discovered were various invoices evidencing expenditures totalling approximately $60,000 made by Mares Trucking between December 1988 and April 1989.
On April 24, 1989, the agents arrested Mares at his apartment. No contraband was found upon the search of the residence. Mares originally denied any knowledge that the warehouse was being used to import cocaine from Mexico for redistribution in the United States. However, when asked to explain the cocaine residue found in the warehouse, he recanted his previous statement. Mares told the agents that three months prior he had either borrowed or been given $10,000 ($8,000 plus $2,000 for the first month’s rent) from Ruben Zazueta-Ruiz in order to establish his business, Mares Trucking. He admitted that he later learned that the warehouse was being used as a drop house for cocaine, but that he did not try to stop it. Mares told the probation officer that he allowed Zazue-ta to stay because he was afraid of him.
Mares was subsequently indicted for conspiracy to import cocaine in violation of 21 U.S.C. §§ 952, 960, and 963. On September 21, 1989, Mares and the government entered into a plea agreement in which it was stipulated that the amount of cocaine possessed for the purpose of sentencing was twenty-three grams, for an initial offense level of twelve. The parties also agreed that a two-point downward adjustment for acceptance of responsibility was warranted in light of Mares’ statements to the agents upon his arrest. Both parties reserved the right to argue for an upward or downward adjustment pursuant to sections 3B1.1[1] and 3B1.2[2] with respect to Mares’ role in the conspiracy.
On November 27, 1989, the district court adopted the analysis of the presentence report with respect to its recommendation that Mares’ offense level be adjusted upward two points pursuant to section 3B1.-1(c). The presentence report stated:
Adjustment for Role in the Offense: According to the Case Agents and the Assistant U.S. Attorney assigned to the case, the defendant held the role of manager or organizer of the trucking business. He is not considered the source of the drugs or even a distributor. His role was to provide a safe location to store the cocaine pending distribution. It therefore would seem appropriate to increase the offense by two levels for an aggravated role in the offense.
Relying on certain information contained in the presentence report and the pretrial testimony of the investigating and arresting officer, Agent Rodriguez, the court found “that the defendant as a lessor of [the] warehouse was involved as whatever you care to characterize him, organizer or manager, or whatever. But he certainly was involved significantly in this operation.”
Adding two points for Mares’ aggravating role and subtracting two points for his acceptance of responsibility, the court arrived at an offense level of twelve. Mares’ criminal history category was I, thus making his sentence range ten to sixteen months. The district court sentenced Mares to a term of sixteen months followed *773 by a three-year term of supervised release. Mares timely appeals this sentence.
DISCUSSION
Mares contends that the government failed to prove by a preponderance of the evidence that he was an organizer or manager in the conspiracy to import cocaine.[3] See United States v. Wilson, 900 F.2d 1350, 1354 (9th Cir.1990) (circumstances justifying upward departure must be proven by preponderance of the evidence). Whether Mares was “an organizer, leader, manager, or supervisor” pursuant to section 3B1.1 is a question of fact reviewable under the clearly erroneous standard. United States v. Sanchez, 908 F.2d 1443, 1447 (9th Cir.1990); United States v. Carvajal, 905 F.2d 1292, 1295 (9th Cir.1990).
Application Note 3 of section 3B1.1, which sets forth the factors to be considered in distinguishing “leaders and organizers” from “managers and supervisors,” indicates that some degree of control or organizational authority over others is required in order for section 3B1.1 to apply.
Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
Sentencing Guidelines, § 3B1.1, Application Note 3. The First Circuit expounded on the control requirement in United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir.1990), wherein it held that in order for section 3Bl.l(c) to apply,
the defendant must have exercised some control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime. This requirement is implicit in the terms ‘organizer, leader, manager and supervisor,’ each of which suggests the presence of underlings or subordinates.
See United States v. Anderson, 895 F.2d 641, 646 (9th Cir.1990) (defendant “gave specific instructions and planned their conduct throughout the course of the enterprise”).
We conclude that there is insufficient evidence to justify a finding that Mares was an organizer, leader, manager, or supervisor in the conspiracy to import cocaine. There are no facts to support the conclusion that Mares exercised control or was otherwise responsible for organizing, supervising, or managing others in the commission of the offense.[4] Cf. Sanchez, 908 F.2d at 1448 (evidence the defendant “supervised the preparation of trucks used” in the smuggling operation and “directed” others in the execution of the scheme); Carvajal, 905 F.2d at 1296 (evidence of the defendant’s “overall control” of drug transaction); United States v. Avila, 905 F.2d 295, 298-99 (9th Cir.1990) (evidence the defendant “coordinated the procurement and the distribution of” the drugs). The evidence considered by the district court during sentencing only established that cocaine was delivered in trail *774 er/tractor tires to a warehouse leased by Mares Trucking. We cannot conclude that Mares organized or controlled his cocon-spirators within the meaning of section 3Bl.l(c) merely because he was the owner of the trucking business which leased the warehouse in which the cocaine was offloaded.
The holdings of United States v. Carrillo, 888 F.2d 117 (11th Cir.1989) (per curiam), and United States v. Farrell, 893 F.2d 690 (5th Cir.1990), do not require a difference result. In Carrillo, a two-point upward adjustment under section 3Bl.l(c) was warranted because the defendant admitted that he supervised other similar low-level employees in a narcotics distribution ring. 888 F.2d at 118. There was also evidence that the defendant managed the “stash house,” received cocaine, and distributed cocaine to others. Id.
Similarly, in Farrell, the defendant was properly found to be a leader in a drug deal with undercover agents due to the fact he “was not only left in charge of the $200,000 [to be used to purchase the marijuana], he was found counting the money — an action indicating a leadership role.” 893 F.2d at 692. There was also evidence that he traveled from New York to Fort Worth to help arrange the sale and that he held a key to a motel room containing $27,000 in cash. Id. No similar involvement has been shown here.
We conclude that the district court’s finding that Mares was an “organizer, leader, manager, or supervisor” in the conspiracy to import cocaine was clearly erroneous, and hence the two-point upward adjustment in offense level was improper. Accordingly, we vacate the four-month increase in sentence which resulted from the erroneous upward adjustment, and reduce the sentence to twelve months, the maximum sentence which may be imposed on a defendant with a criminal history category of I and an offense level of ten.
VACATED.

. Section 3B1.1, entitled “Aggravating Role,” provides:
Based on the defendant’s role in the offense, increase the offense level as follows:
(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

. Section 3B1.2, entitled "Mitigating Role,” provides:
Based on the defendant’s role in the offense, decrease the offense level as follows:
(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.

. We note that Mares’ appeal is not moot even though he has finished serving his term in prison as the sentence imposed in this case may have "collateral consequences.” See United States v. Montenegro-Rojo, 908 F.2d 425, 431 n. 8 (9th Cir.1990); United States v. Drabeck, 905 F.2d 1304, 1305 n. 1 (9th Cir.1990). Because Mares was sentenced to a term in excess of thirteen months, if he is ever again sentenced under the guidelines his criminal history score will automatically be increased by three points. See Sentencing Guidelines, § 4Al.l(a). Alternatively, if the challenged two-point upward adjustment is found not to apply, then Mares’ criminal history score for a future conviction could only be increased by two points as the maximum sentence which may be imposed for this conviction would be twelve months. Id. § 4Al.l(b).

. A statement in the presentence report to the effect that Mares supervised or directed the unloading of cocaine on two occasions was stricken without objection from the government. In fact, the government candidly admitted that they had no evidence Mares “actually supervised or directed others to unload cocaine.”