959 F.2d 242
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Carlos ALVARADO, Defendant-Appellant.
 No. 91-50290.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 6, 1992.*
Decided March 31, 1992.
 
 1
 Before HUG and PREGERSON, Circuit Judges, and PECKHAM,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Appellant Juan Carlos Alvarado ("Alvarado") entered a guilty plea to conspiracy and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 846 and § 841(a)(1) and subsequently entered into a stipulation of facts with the government as to the nature and extent of his involvement in the offense charged.[1] Alvarado now appeals the district court's finding that he was an "organizer, leader, manager or supervisor" in a criminal activity pursuant to 3B1.1(c) of the United States Sentencing Commission Guidelines (Nov.1990) (hereinafter "Guidelines").[2] We review this finding for clear error. United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.1990).
 
 I.
 
 4
 Section 3B1.1(c) of the Guidelines provides for a two level upward adjustment if the defendant is found to be "an organizer, leader, manager, or supervisor in any criminal activity" which involves less than five participants and is not otherwise extensive. In interpreting this provision, the Ninth Circuit has enunciated five factors relevant to applying Section 3B1.1(c): (1) whether the defendant directed the activities of his accomplices, United States v. Carvajal, 905 F.2d 1292, 1296 (9th Cir.1990), (2) whether the defendant controlled the flow of the drugs by, for instance, supervising the preparation of the cocaine for transportation, United States v. Sanchez, 908 F.2d 1443, 1448 (9th Cir.1990), (3) whether the defendant recruited his accomplices, Sanchez, 908 F.2d at 1448, (4) whether the defendant arranged the sale of the cocaine, Carvajal, 905 F.2d at 1296, and (5) whether the defendant controlled the flow of money as shown by possession of financial records, Sanchez, 908 F.2d at 1448, or his being the one to receive the money after exchange, Carvajal, 905 F.2d at 1296.
 
 
 5
 Underlying each of these factors is a concern regarding relative culpability which seeks to identify and punish more severely those who exercise some degree of control or organizational authority over others. Mares-Molina, 913 F.2d at 773. However, the defendant need not personally supervise each participant nor must the defendant be the only leader or organizer. United States v. Smith, 924 F.2d 889, 896 (9th Cir.1991).
 
 II.
 
 6
 In making its finding, the district court relied on the stipulation of facts entered into by appellant. Alvarado argues that the stipulation of facts entered into with the plea agreement does not support the district court's finding because it cannot be said under a preponderance standard that defendant exercised control over one of the participants. More specifically, Alvarado argues that both he and co-defendant had a relatively equal degree of responsibility and acted in concert at all times.
 
 
 7
 Appellant, however, fails to provide this court with a single basis for his claim; he neither identifies a factual mistake by the district court nor suggests that the district court assigned improper weight to any particular stipulation. In contrast, the United States provides several facts culled from the stipulation of facts to support a conclusion that defendant controlled the money, controlled the drugs, had primary contact with the purchaser of the drugs, and instructed Campbell on methods of avoiding detection.[3] The Presentence Report adds that defendant recruited Campbell to transport the narcotics and arranged her itinerary and that it was defendant who initially accepted an uncle's offer to transport the cocaine to Alaska. For these reasons, the district court's order is not clearly erroneous.
 
 III.
 
 8
 The district court also made an alternative finding that even if defendant and co-defendant Fortier's roles could be viewed as equally controlling, it would find that both were leaders given that Campbell was clearly a follower. The Guidelines allow for a finding that more than one person was a leader. In this connection, Application to Section 3B1.1 states that "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." From the facts adduced above, it is clear that Campbell was subordinate to Alvarado and it is possible that Campbell was also subordinate to Fortier. Accordingly, the district court did not commit clear error in finding that even if Fortier's role was equal to defendant's both were "leaders" for the purposes of Section 3B1.1(c).
 
 
 9
 For these reasons, the district court's order is affirmed.
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 The Honorable Robert F. Peckham, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Defendant was indicted along with co-defendants Rene Sophie Fortier, his common-law wife, and Kelly Lynn Campbell
 
 
 [2]
 Section 3B1.1(c) allows for enhancement by two levels if this finding is made. The Presentence Report recommended this two point enhancement and the government joined with this recommendation
 
 
 [3]
 The stipulation of facts provides ample factual support for the Presentence Report's conclusion that "the defendant held the highest level of responsibility in this case." See Presentence Report, at p 38. First, Alvarado controlled the financial resources for the operation as reflected in three facts: Alvarado paid co-defendant Campbell approximately $100 dollars to open a cellular telephone account which was then used to arrange a drug transaction in Alaska; he also had possession of money from an earlier drug transaction stored in his closet; and he disbursed funds for expenses incurred including purchasing an assault rifle and two plane tickets. Second, Alvarado controlled the drugs as manifested in the facts that he arranged for co-defendant Campbell to receive cocaine as partial payment for opening the cellular telephone account, that he procured two grams for Campbell to take to Alaska and that he also had possession of cocaine on the night before the drug run to Alaska. Third, Alvarado had primary contact with the purchaser as demonstrated by the fact that he provided Campbell with the name and telephone number of purchaser in Alaska. Finally, Alvarado instructed Campbell on using an alias and a false address and on using proceeds from sale to avoid detection